Booth, Judge,
delivered the opinion of the court:
On September 24,1917, the Coastwise Transportation Company, of Boston, Mass., entered into a charter party with E. J. Lavino & Co., of Philadelphia, Pa., for the use of the steamship Middlesex. The terms of the charter provided a *426 monthly rental of $80,000, extending for nearly a year, and, among other stipulations, expressly set forth: “ In case of requisition or commandeering by the United States Government, or under its authority, it is mutually agreed that this charter is canceled.” The plaintiff herein indisputably procured for the Coastwise Transportation Co. the above charter. He was a ship broker, and an oral agreement between the parties obligated him to perform the service, and for it he Was to receive from the company a compensation of five per cent of the gross amount of the charter, to be paid monthly in advance, so long as the charter continued. The. plaintiff never received any portion of said compensation, because on a date prior to the vessel’s entry into the service provided by the charter the President of the United States, acting under the terms of the act of June 15,1917, known as the emergency shipping fund act, 40 Stat., 182, requisitioned the vessel, and it was placed in the service of the United States and thereafter employed by the War Department.
The plaintiff by this suit endeavors to recover from the United States the precise amount he would have earned under his contract with the Coastwise Transportation Co., which he alleges he was prevented from receiving by the intervention of the Government. There is no vital dispute as to the facts. It is perfectly obvious that the. defendant, by requisitioning the vessel, rendered the inter ¶artes agreement between the plaintiff and the Coastwise Transportation Co. ineffective, and did serve, for the time being at least, to preclude the plaintiff from realizing a very substantial sum of money. It is, however, manifest upon the face of the charter party that the parties directly concerned in its negotiation and execution, including the plaintiff, all knew that what was said and done and every transaction which surrounded the proceedings was in the light and positive anticipation of the happening of the event which did happen and thereby forestall the plaintiff in reaping the rewards of his contract. The parties knew that the country was in war; they knew the necessities of the Government with respect to ocean transportation; they apprehended the intervention of the Government and very wisely and judiciously adjusted their respective rights in conformity with the disturbed con *427 ditions of the country. Therefore, upon the merits of this controversy, granting arguendo that the defendant may be suable for the loss complained of, we believe the claim is without merit. The plaintiff was to receive a commission for negotiating and procuring a charter party satisfactory to the transportation company. His rights must be measured by* the service he performed and the benefits he secured to the party by whom he was employed. Fortunately all these elements of service are distinctly and positively apparent upon the face of the written instrument itself. What are they ? He did secure for the company the letting of the vessel. The latter was pleased with the terms of the letting and accepted them in approved form but left open and indecisive the question of plaintiff’s pay therefor. He was to receive his compensation monthly. It'was predicated upon the gross amount of the charter. Thus far the issue was certain and fixed. But the owner of the vessel was conscious of the fact that it must not place itself in the-position of liability for the payment of the promised price, in view of war conditions, and with his acquiescence inserted into the very instrument he was employed to procure a clause which concededly relieves them from complying with the agreement under which the plaintiff now asserts his rights against the defendant. No substantial benefit of any character accrued, to the Coast-wise Transportation Co. through the services of the plaintiff, and they were not to pay for his services if precluded from obtaining the full benefit of the same. The plaintiff knew the hazards of the undertaking upon which he entered. He was not deceived by any parties to the transaction. He was fully aware of the fact that he might under certain contingencies lose his entire compensation. He was willing to assume the hazards, approve the conditions, and acquiesce in the possibility of the urgent needs of the Government in time of war-rendering all that he had done a service not compensable. This situation is amply confirmed by the present proceeding. The institution of a suit against the United States instead of-against the Coastwise Transportation Co., or a proceeding in admiralty against the vessel itself, is a potent admission that the plaintiff herein is seeking to collect from the Government an amount not collectible against the direct party in interest. *428 If, then, the plaintiff is without a right or remedy against the company or the vessel, by what process of reasoning can it be said he was deprived of property rights by the action of the defendant? No act of the Government has estopped him from preferring his claim against the transportation company or the vessel.
On the contrary, the defendant has decidedly facilitated such a proceeding, for the use of the vessel has been fully paid for and the vessel returned to the company by the defendant. It will not answer this contention to say that the defendant’s conduct destroyed the right and remedy. The taking of one’s property for which the defendant is answerable is necessarily such a property as is free from the happening of contingencies which, when they do happen, destroy the same and leave the party with a valueless possession. Parties are, as a general rule, free to make such contracts as they mutually agree upon. Of course, a contract is property, but this single fact alone is not sufficient to render the Government liable in a proceeding of this sort, where the very contract which creates a property right is subject, under the precise conditions which subsequently obtained, to. degen-ei'ate into an unenforceable legal nonentity. The defendant took nothing away from the plaintiff, for the simple reason that the plaintiff had nothing to take.
The case is in nowise similar to the various authorities ■cited, wherein the Government, directly or indirectly, takes the lands and other incidental property rights from riparian owners in improving navigable streams in aid of commerce. These are direct proceedings between the owners and the Government, predicated upon the right of eminent domain. They do not involve contingent undertakings between the owners and third parties, to which the United States was not a party and of which it had no notice. It might just as well be said that if a riparian owner of land had executed a contract with a real estate agent to dispose of his estate and to pay therefor a certain commission in the event the Government did not take it, the subsequent taking by the Government which forestalled the collection of the commission operated to impose a liability upon the latter to make good the agent’s losses.
*429 There are other interesting questions presented, but we do not deem it necessary to discuss them. In our view of the case the defendant is not. suable under the stated facts. The transportation company is in possession of the vessel free from any claims of the United States. No act of the United States can be construed as having taken away from plaintiff a property right, contractual in its nature, created by the voluntary acts of the parties to a transaction, to which the defendant was ah entire stranger. If the defendant simply prevented the performance of a contract, it was conduct not in harmony with the long-expressed views of the courts which attach, liability as for a taking. Morrisdade Coal Co. v. United States, 55 C. Cls., 310.
A contention is advanced to bring the case within the act of June 15, 1917. It is obviously futile.
The petition will be dismissed. It is so ordered.
Güaham, Judge; Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.